<hr />

### ROWE *v.* LENT.

(*Supreme Court, General Term, Third Department.*   December 28, 1891.)

PHYSICIANS AND SURGEONS—LIABILITY FOR WANT OF SKILL.

> The law imposes on a surgeon the duty of being reasonably skilled in his profession, and the exercise of care and prudence in the application of that skill, and if he be wanting in either, to the injury of his patient whom he undertakes to treat, he is liable for damages.

Appeal from circuit court, Columbia county.

Action for malpractice by Wallace B. Rowe against Isaac H. Lent, a physician. Defendant appeals from a judgment entered upon a verdict for plaintiff for $2,000. Affirmed.

Argued before LEARNED, P. J., and MAYHAM and KELLOGG, JJ.

*Gardinier & Barrett,* (*E. Countryman,* of counsel,) for appellant. *H. W. McClellan,* for respondent.

MAYHAM, J. This action was prosecuted by the plaintiff to recover damage alleged to have been sustained by him by reason of the alleged negligence and want of skill of the defendant, as a surgeon, in reducing a dislocation of the plaintiff's shoulder. In January, 1889, the plaintiff was thrown from a wagon upon the ground, and dislocated his right shoulder, and the defendant, who was plaintiff's family physician, was called to reduce the dislocation. After considerable effort, and with some difficulty, the defendant succeeded, as he claimed, and still claims, in reducing the dislocation; and from that time the defendant attended upon and treated the plaintiff for the injury, giving directions as to the manner of caring for the shoulder and arm, and frequently and daily visited and examined the plaintiff, until the 24th of July, when he found, as he claimed and still insists, that the shoulder was in its normal condition, and a cure had been effected. The evidence does not disclose that the defendant treated the plaintiff after the 24th of July, although he saw the plaintiff frequently, and examined his shoulder, until plaintiff left, about the 14th of August; and during that interval the evidence tends to show that plaintiff attended to his usual business, but there is some non-professional evidence that the right shoulder did not look like the left, but some of the expert testimony tended to show that that difference in appearance might exist even if the dislocation had been properly reduced. During the time defendant regularly treated the plaintiff he made repeated statements that the shoulder was getting along nicely, and after the plaintiff left home he went to the sea-shore and took ocean baths. On the 13th of August plaintiff visited New York city, and the next day was examined at the Chamber-Street Hospital, when it was ascertained that the shoulder was still dislocated, and an unsuccessful attempt was made by the surgeon in charge of that institution to reduce such dislocation. The theory of the plaintiff on the trial was that the dislocation had never been reduced by the defendant, and there was evidence on the trial given by expert witnesses

tending to support that theory, upon which, however, there was some conflict in the expert testimony. It seemed to be conceded by all the medical testimony that at the time of the examination at the hospital in New York the shoulder was dislocated, and that the injury still continues, and is permanent. Whether the dislocation had been reduced, and whether the defendant gave proper directions to the patient after he claimed to have reduced the same, and exercised the requisite skill and care in the treatment of this injury, was the subject of inquiry and investigation by the testimony given on the trial, upon which there was some conflict, which we think was properly submitted to the jury for their determination. The law imposes upon a physician and surgeon, in the practice of physic and surgery, the duty of being reasonably skilled in his profession, and the exercise of care and prudence in the application of that skill, and if he be wanting in either, to the injury of his patient whom he undertakes to treat, he is liable for damages. The question in each case of this character is whether the defendant exercised reasonable care and diligence, with the ordinary skill required in the practice of his profession. In *Carpenter* v. *Blake*, 10 Hun, 358, the rule was laid down thus: "One who offers himself for employment in a professional capacity undertakes— *First*, that he possesses that reasonable degree of learning and skill which is ordinarily possessed by professors of the same art or science, and which is ordinarily regarded by those conversant with the employment as necessary to qualify him to engage in such business; *second*, that he will use reasonable and ordinary care and diligence in the exercise of his skill and the application of his knowledge to accomplish the purpose for which he is employed; *third*, to use his best judgment in the exertion of his skill and the application of his diligence." The test, however, seems to be whether, in the case on trial the requisite skill, care, and diligence were employed, and not whether the practitioner is reputed to possess such skill. But the surgeon is not necessarily chargeable with want of the requisite professional skill or negligence and want of care simply because he does not succeed in accomplishing the desired result. Human skill cannot relieve all the infirmities, ills, or injuries to which mankind are subject, and the only test, therefore, that can be applied is whether, in a given case, the surgeon has exercised reasonable skill and attention in his treatment of the patient who has placed himself under his care, and whom the latter has undertaken to treat. As we have seen in this case, that question was before the jury upon evidence somewhat conflicting, and the whole case was fully and fairly left to them by the charge of the trial judge, in an able and impartial manner, to which no exception was taken by the counsel for the defendant; and the jury, upon this conflicting evidence, found in favor of the plaintiff. While perhaps they might, upon this evidence, have found either for the plaintiff or defendant, there is sufficient evidence in support of their conclusion to uphold the verdict, and the court on appeal cannot say their verdict was either against the evidence or unsupported thereby. That being a clear question of fact, proper for the determination of the jury, it was no error for the trial court to refuse to nonsuit on the motion of the defendant, or to direct a verdict for the defendant.

The only remaining question is whether on the trial the court erred in receiving or rejecting evidence. The only question raised upon this appeal by the appellant is as to the ruling of the judge striking out an answer to a question put to Dr. Vanderveer on his cross-examination. The question was an hypothetical one, and objected to by the plaintiff on the ground that it assumed a state of facts not proved. It was answered, and the answer was stricken out on the plaintiff's motion. It is unnecessary to inquire whether the objection was or was not well taken, as there was no exception taken to the ruling, as appears from the case. We see, therefore, no error in the receipt or exclusion of evidence for which the judgment can be reversed.

Judgment affirmed, with costs. All concur.